UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |
|---|---|
| RUSSELL A. JACKSON, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF REGINA JACKSON, <br><br> Plaintiff <br><br> v. <br><br> UNITED STATES OF AMERICA <br><br> Defendant | * <br> * <br> * <br> * <br> * CIVIL ACTION NO. <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

## COMPLAINT

### Parties

1. Russell A. Jackson is a resident of Sangerville, Maine. Russell Jackson is the son of the late Regina Jackson ("Mrs. Jackson"). Russell Jackson is the duly-appointed Personal Representative of the Estate of Regina Jackson.

2. Penobscot Community Health Care ("PCHC") is a federally supported health facility pursuant to the Federally Supported Health Centers Assistance Act of 1992, as amended, 42 U.S.C. § 233. This Act provides that the Federal Tort Claims Act ("FTCA") is the exclusive remedy for injuries caused by employees of a deemed community health center. The United States of America is therefore the appropriate party defendant in this case.

### Jurisdiction and Venue

3. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 233, and under the FTCA, 28 U.S.C. §§ 1346 (b), 2401(b), and 2671-2680.

4. Russell Jackson timely submitted to the United States a Notice of Claim, Standard Form 95, dated February 28, 2021 and received by the United States on March 22, 2021.

Exhibit 1, Claim for Damage. The United States failed to make final disposition of the claim within six months after Russell Jackson filed it. Such failure to make a final disposition operates as a final denial of the claim for purposes of 28 U.S.C. § 2675. 28 U.S.C. § 2675(a).

5. Venue is proper in the District of Maine pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in the district. Venue is proper in Bangor, pursuant to Rule 3(b) of the Civil Rules of the United States District Court for the District of Maine, because a substantial part of the events or omissions giving rise to the claims occurred in Penobscot County.

**Factual Allegations**

6. On April 26, 2019, Mrs. Jackson was 77 years old.

7. On or about April 26, 2019, Mrs. Jackson was admitted to the Westgate Center for Health and Rehabilitation nursing home in Bangor, Maine ("Westgate").

8. Mrs. Jackson remained a resident of Westgate up until her death on August 12, 2019.

9. On information and belief, multiple medical providers who cared for Mrs. Jackson during her four-month residency at Westgate were employees of PCHC who were acting within the course and scope of their employment while caring for Mrs. Jackson. These include the two medical providers in charge of Mrs. Jackson's care, Meghann Derosier DO and Amy Langley FNP, as well as Nicole Maker PAC, Amelia Hersey PAC, and Melina McInnis FNP.

10. The patient chart from Westgate contains additional illegible names and signatures of other providers who may also have been employees of PCHC. This Complaint should be construed to include all employees of PCHC with material involvement in Regina

      Jackson's care or treatment between her admission on April 26, 2019 up until her death at Westgate on August 12, 2019.

11. Upon her April 26, 2019 admission and continuing throughout her residency, the PCHC employees who cared for Mrs. Jackson were and/or should have been aware that Mrs. Jackson was at risk of falling and was suffering from cognitive impairments including impaired memory and safety awareness, ongoing confusion, anxiety about her new living environment, dementia, disorientation, and wandering.

12. On April 28, 2019 Mrs. Jackson experienced what is described in the medical chart as a series of "seizures." At the request of Mrs. Jackson's husband, Gerald Jackson, she was transported by ambulance to the emergency department at St. Joseph Hospital for evaluation.

13. Notes by providers at St. Joseph Hospital document difficulties reaching any of Mrs. Jackson's care providers who could provide information about the circumstances of these "seizures."

14. While admitted to St. Joseph Hospital, Mrs. Jackson underwent PT/OT evaluations. These evaluations noted a history of "frequent falls," described her as having only fair dynamic balance when unsupported, and noted she required occasional reaching out for furniture or walls to increase gait stability. The PT/OT evaluations recommended the use of an assistive device as well as skilled PT services for gait training to decrease fall risk.

15. On April 30, 2019, Mrs. Jackson was discharged back to Westgate. Her discharge paperwork specifies she is being discharged to the care of a skilled nursing facility. Copies of the PT/OT assessments were also provided to Westgate, and on information and belief were reviewed by the PCHC employees who cared for Mrs. Jackson.

16. The following day, on May 1, 2019, a "Fall Risk Assessment" was completed by a nurse at Westgate (the signature is illegible so this provider's name is unknown at present). This Fall Risk Assessment failed to account for Mrs. Jackson's well-documented history of wandering, the recent provider notes describing a history of falls, Mrs. Jackson's need for supporting herself on furniture while walking, and her recent hospitalization for suspected seizure.

17. Over the next seven weeks, there were repeated instances where Mrs. Jackson was found to be wandering around the nursing home while anxious, agitated, confused, and disoriented. In one instance, Mrs. Jackson was left unattended long enough that she was able to get into a male resident's room, and, believing he was her husband, removed all her clothes. In another instance, she was left unattended long enough that she was able to leave her room at night, walk down the hallway, enter a male resident's room, get in bed with him, and fall asleep before staff realized she was missing. Instead of keeping Mrs. Jackson safe, the PCHC employees responsible for her treatment failed to develop an appropriate plan of care to address her concerning and dangerous behaviors.

18. As time went on, Mrs. Jackson's husband became increasingly concerned that she was not being well cared for. When he visited, he often found her colostomy bag leaking, with her surrounding skin irritated and inflamed. When he reviewed her medication paperwork, he discovered she was getting only half the dose of insulin she was supposed to be receiving for management of her diabetes.

19. On July 23, 2019, Mrs. Jackson fell while wandering through the nursing home.

20. She was brought by ambulance to St. Joseph's Hospital, where she was diagnosed with a left femoral neck fracture.

21. Mrs. Jackson was admitted to St. Joseph's Hospital, and underwent left hip hemiarthroplasty the following day.

22. On July 29, 2019, Mrs. Jackson was discharged back to Westgate to receive skilled nursing care and rehabilitation.

23. In the two weeks that followed, Mrs. Jackson's condition steadily declined. She ultimately passed away on August 12, 2019.

## COUNT I: NEGLIGENCE CAUSING PRE-DEATH PAIN AND SUFFERING

24. Plaintiff reasserts the previous paragraphs as if set forth fully herein.

25. As medical providers involved in the care and treatment of Mrs. Jackson, PCHC's employees owed a duty to her to provide medical advice, testing, treatment, and care consistent with the standards of reasonable and safe medical care.

26. PCHC's employees breached the standard of care for reasons including, but not limited to, the following:

    a. Failure to accurately assess Mrs. Jackson's individualized care needs;

    b. Failure to develop an appropriate care plan and to implement the care plan;

    c. Failure to supervise and monitor Mrs. Jackson to ensure her safety;

    d. Failure to hire, retain and properly train sufficient staff to properly supervise, monitor and implement care plans on behalf of the residents;

    e. Failure to budget so as to provide adequate staffing and monitoring and safety devices systems to ensure resident safety;

    f. Failure to supervise and monitor Mrs. Jackson to prevent avoidable harm, including but not limited to harm resulting from falls;

  g. Failure to properly assess and implement a fall prevention plan, including the use of appropriate safety devices;

  h. Failure to properly prescribe, administer and monitor the effects of appropriate prescription medication; and,

  i. Failure to properly coordinate Mrs. Jackson's medical care to meet her medical needs.

27. As a direct and proximate result of PCHC's employees' negligence, Mrs. Jackson experienced conscious pain and suffering before her death.

## COUNT II: NEGLIGENCE CAUSING DEATH

28. Plaintiff reasserts the previous paragraphs as if set forth fully herein.

29. As medical providers involved in the care and treatment of Mrs. Jackson, PCHC's employees owed a duty to provide her medical advice, testing, treatment, and care consistent with the standards of reasonable and safe medical care.

30. PCHC's employees breached the standard of care for reasons including, but not limited to, the following:

  a. Failure to accurately assess Mrs. Jackson's individualized care needs;

  b. Failure to develop an appropriate care plan and to implement the care plan;

  c. Failure to supervise and monitor Mrs. Jackson to ensure her safety;

  d. Failure to hire, retain and properly train sufficient staff to properly supervise, monitor and implement care plans on behalf of the residents;

  e. Failure to budget so as to provide adequate staffing and monitoring and safety devices systems to ensure resident safety;

    f. Failure to supervise and monitor Mrs. Jackson to prevent avoidable harm, including but not limited to harm resulting from falls;

    g. Failure to properly assess and implement a fall prevention plan, including the use of appropriate safety devices;

    h. Failure to properly prescribe, administer and monitor the effects of appropriate prescription medication; and,

    i. Failure to properly coordinate Mrs. Jackson's medical care to meet her medical needs.

31. As a direct and proximate result of PCHC's employees' negligence, Mrs. Jackson died, causing Mrs. Jackson's Estate and beneficiaries to suffer damages including funeral expenses, medical expenses, emotional distress and the loss of care, comfort, society and companionship of a beloved wife and mother.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, funeral expenses, medical expenses, pecuniary loss, pain, suffering, emotional distress, loss of care, comfort, society and companionship, together with interest, costs, and such other and further relief as the Court deems just and appropriate.

Dated: April 25, 2022

                                              /s/ Elizabeth A. Kayatta
                                             Elizabeth A. Kayatta, Esq.
                                             Berman & Simmons, P.A.
                                             P.O. Box 961
                                             Lewiston, ME  04243-0961
                                             (207) 784-3576
                                             ekayatta@bermansimmons.com
                                             Attorney for Plaintiff